IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



THOMAS HOPKINS, §
 §
    Applicant, §
 §
 §
VS. § NO. 4:08-CV-742-A
 §
R. TAMEZ, WARDEN, §
 §
    Respondent. §

MEMORANDUM OPINION
and
ORDER

Came on for consideration the above-captioned action wherein Thomas Hopkins ("Hopkins") is applicant and Rebecca Tamez, Warden at FCI Fort Worth, is respondent.[1] This is an application for writ of habeas corpus in which Hopkins, a federal prisoner, seeks relief under 28 U.S.C. § 2241. In short, Hopkins claims that his due process rights were violated by the issuance of an amended disciplinary hearing report that awarded him a lesser punishment than the original report. For the reasons discussed herein, the court concludes that such motion should be denied.

I.

Background

On May 1, 2008, while serving his sentence at the Federal Correctional Institution at Fort Worth, Texas, Hopkins was charged with a violation of Code 113, possession of any

---

[1] Applicant refers to his application as "petition" and to himself as "petitioner." Consistent with the language of 28 U.S.C. § 2241, the court uses the terms "applicant" and "application" instead of "petitioner" and "petition."

narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by medical staff, and Code 305, possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels. The charges resulted from a search of Hopkins that revealed eight tablets of Amitriptyline, approximately twelve crushed tablets of Percocet, and eight books of stamps. Hopkins received a copy of the Incident Report reflecting these facts on the same day of the incident. Hopkins appeared before the Unit Disciplinary Committee ("UDC") on May 5, 2008. Because one of the charges, Code 113, is a "greatest severity" charge, the UDC forwarded the case to the disciplinary hearing officer ("DHO") for further disposition. At some point before the DHO hearing, Hopkins was placed in a Special Housing Unit ("SHU"). Hopkins was advised of his rights on May 5, 2008.

On May 20, 2008, at a hearing before the DHO, Hopkins denied the allegations, indicating that he was prescribed Percocet and that he saved the medication to use when his sickle cell disease flared up. Hopkins also stated that he kept the Amitriptyline tablets in his jacket and forgot about them. Hopkins was not prescribed the Amitriptyline, and both medications were restricted to be taken only at a "pill line." In a report issued June 6, 2008, the DHO found that Hopkins committed a violation of Code 113, but not a violation of Code 305. The DHO sanctioned Hopkins to loss of 41 days of good conduct time ("GCT"), placement in disciplinary segregation for 60 days, and loss of

privileges for 545 days. Hopkins was immediately placed in disciplinary segregation.

Hopkins appealed the DHO's findings by filing a Request for Administrative Remedy with the regional director on June 18, 2008. Before formally answering Hopkins's appeal, the regional director instructed the DHO to amend the June 6 report. The regional director told the DHO to review the evidence again because Hopkins could not have been found to have violated Code 113.[2] Pursuant to these instructions, the DHO reconsidered the evidence presented at the May 20 hearing by reviewing the original DHO report.

After reconsidering the evidence, the DHO issued an amended report on July 9, 2008. The amended report contained findings that Hopkins, by taking and keeping the Percocet outside of the "pill line," committed a violation of Code 302, misuse of authorized medication, and, by having the Amitriptyline, committed a violation of Code 305. For the Code 305 violation, the DHO sanctioned Hopkins with the loss of 13 GCT days, 14 days of disciplinary segregation, and loss of privileges for 365 days. For the Code 302 violation, Hopkins was sanctioned with a loss of 13 GCT days, 14 days of disciplinary segregation, and loss of privileges for 60 days, but, according to respondent, these sanctions have been suspended. Hopkins appealed the findings

---

[2] The regional director told the DHO that Hopkins could not have been found to have violated Code 113 because he was prescribed the Percocet. Respondent argues, and the DHO's affidavit suggests, that Hopkins could have nonetheless been found to have violated Code 113 based on the Amitriptyline in his possession, for which he had no prescription.

3

reflected in the amended report, which the regional director formally responded to on August 22, 2008, concluding that Hopkins was entitled to no further relief. Hopkins subsequently timely filed this application.

## II.

### Grounds of the Application

Hopkins asserts four grounds as the basis of his application. First, Hopkins claims that he was denied due process by the manner in which his GCT was forfeited. Second, Hopkins claims that the DHO arbitrarily took away his privileges. Third, Hopkins claims that he was denied due process because the DHO acted in retaliation. Finally, Hopkins claims that the investigator intentionally did not investigate his claim, resulting in Hopkins's placement in the SHU. For the reasons discussed herein, each ground is without merit.

## III.

### Standard of Review

As with all pro se prisoner filings, the court construes Hopkins's application liberally. Federal courts have a narrow role in reviewing prison proceedings. Stewart v. Thigpen, 730 F.2d 1002, 1005 (5th Cir. 1984). In determining whether to grant a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the court evaluates whether the prisoner is "in custody in violation of the Constitution or the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## IV.

### Analysis

In the context of a disciplinary hearing, a prisoner's rights are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974). To establish a violation of the Due Process Clause in connection with a disciplinary hearing, a prisoner must establish that he has been denied a "'liberty interest' that the prison action implicated or infringed." Richardson v. Joslin, 501 F.3d 415, 418 (5th Cir. 2007). Such interest is either conferred by the Due Process Clause or created by statute. Id. at 419. Liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

For a disciplinary hearing that involves a liberty interest, due process is satisfied where the inmate receives (1) 24-hour advanced written notice of the charges against him so he can prepare a defense, (2) an opportunity to call witnesses on his behalf, (3) a detached and neutral disciplinary body, and (4) a written statement from the factfinder that includes the evidence relied on and the reasons for the actions taken. See Wolff, 418 U.S. at 564-571. In examining the evidence relied on at the disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion

5

reached by the disciplinary board." Superintendent, Mass. Corr. Instit. v. Hill, 472 U.S. 445, 455-56 (1985).

A.  Hopkins's Disciplinary Proceeding Complied with the Factors Set Forth in Wolff.

Hopkins urges that his disciplinary hearing denied him due process. Specifically, Hopkins claims that (1) "reinstating" the Code 305 violation was an arbitrary and capricious action, (2) there was no evidence to support the Code 305 violation and the DHO did not describe the evidence she relied upon in the amended report, (3) the DHO should have referred the case back to the UDC, and (4) there were no findings of repetitive conduct to warrant Hopkin's loss of GCT.[3]

   1.  The DHO Did Not Violate Due Process by Finding Code 302 and 305 Violations Instead of a Code 113 Violation.

Hopkins devotes much of his application and reply to the argument that, because the DHO originally dismissed a Code 305 violation based on books of stamps, she could not, in Hopkins's words, "reinstate" the Code 305 violation in the amended report.

"The Constitution does not guarantee good time credit for satisfactory behavior while in prison." Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997). It is unclear whether 18 U.S.C. § 3624 confers a liberty interest in good time credit. See August v. Payne, 46 Fed. App'x 732, *2 n.5 (5th Cir. 2002). But see Belasco v. Bidden, 89 Fed. App'x 896 (5th Cir. 2004). Even

---

[3] Hopkins combines claims (3) and (4) as one. The court characterizes these claims separately because each is without merit for different reasons.

6

assuming that section 3624 confers a liberty interest in good time credits, Hopkins's argument fails.

The notice requirement of <u>Wolff</u> functions "to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, *in fact*." <u>Wolff</u>, 418 U.S. at 564 (emphasis supplied). The facts reflected in the Incident Report are as follows:

> ON MAY 1, 2008, AT APPROXIMATELY 12:20 PM, I CONDUCTED A SEARCH OF INMATE HOPKINS', REG. NO. 57898-180, PROPERTY AND DISCOVERED 8 100MG TABLETS OF AMITRIPTYLINE AND APPROXIMATELY 12 CRUSHED TABLETS OF PERCOCET. THESE TABLETS WERE IDENTIFIED BY A. HANSON, CHIEF PHARMACIST. INMATE HOPKINS IS PRESCRIBED PERCOCET, BUT IS ONLY AUTHORIZED TO CONSUME THE MEDICATION AT PILL LINE. INMATE HOPKINS IS NOT PRESCRIBED AMITRIPTYLINE WHICH IS ALSO A PILL LINE MEDICATION. INMATE HOPKINS CIRCUMVENTED MEDICAL PROCEDURES BY TAKING AUTHORIZED MEDICATION OFF OF THE PILL LINE. THEREFORE, INMATE HOPKINS IS IN POSSESSION OF ANY NARCOTIC NOT PRESCRIBED FOR THE INDIVIDUAL BY THE MEDICAL STAFF TO BE REMOVED FROM THE PILL LINE. IN ADDITION, I ALSO FOUND APPROXIMATELY 8 BOOKS OF STAMPS.

Resp't App. at 1. Hopkins received notice of the Incident Report on May 1, 2008, exceeding the 24-hour requirement set forth in <u>Wolff</u>. The report gave Hopkins a clear indication of the facts of which he was being charged. Rather than finding that Hopkins committed the Code 113 violation as charged, the DHO found that Hopkins committed violations of Code 302 and Code 305. The DHO had the discretion to make such findings as long as they were reflected in the Incident Report. <u>See</u> 28 C.F.R. § 541.17(f), 541.17(i). The court is satisfied that the Incident Report gave Hopkins constitutionally sufficient notice of the facts for which he would have to defend. Accordingly, the DHO's finding that

Hopkins committed violations of Codes 302 and 305, rather than Code 113, does not offend due process.

Insofar as Hopkins argues that the sanctions in the amended report for Code 305 somehow violate Bureau of Prisons ("BOP") Policy Statement 5270.07, the court rejects this argument. The DHO did not increase or change any sanctions for the original alleged Code 305 violation for the books of stamps found during the search. Rather, the finding of a Code 305 violation in the amended report, based on conduct originally found to be a violation of Code 113, was made independent of the Code 305 violation dismissed in the original report, based on allegations involving books of stamps.

2. There was "Some Evidence" to Support the Code 305 Violation, Which the DHO Described in the Amended Report.

Hopkins next contends that the DHO found no evidence to support the Code 305 violation, nor did she describe the evidence she relied upon. "Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." Hill, 472 U.S. at 456.

A plain reading of the amended report shows that there was sufficient evidence to satisfy the standard set forth in Hill. The report reflects that, in finding that Hopkins violated Code 305, the DHO relied upon (1) Hopkins's admission that the Amitriptyline was in his possession, (2) Hopkins's medical record

8

as reviewed by Health Services staff member Arden Hanson confirmed that Hopkins was not prescribed the Amitriptyline, (3) photos of the contraband, and (4) the fact that Amitriptyline is restricted to be taken only at the "pill line." The court concludes that there is more than sufficient evidence to support the DHO's finding that Hopkins engaged in a violation of Code 305 by having Amitriptyline in his possession.

    3.    <u>The DHO was Not Required to Refer the Proceeding Back to the UDC</u>.

Under its regulations, according to Hopkins, the DHO abused its discretion by not referring the case back to UDC after finding that the Code 113 violation was unwarranted. "A regulation may create a personal liberty interest if it uses mandatory language to place a substantive limit on official discretion." Wottlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998) (citations omitted). The language of the regulation to which Hopkins refers is clearly permissive, not mandatory. See 28 C.F.R. § 541.17(e) ("The DHO *may* refer the case back to the UDC for further information or disposition." (emphasis supplied)).

    4.    <u>The DHO Did Not Need to Find a Repetitive Violation to Disallow Hopkins's GCT</u>.

Hopkins seems to allege that, in order for the DHO to forfeit Hopkins's earned GCT, Hopkins must have engaged in repetitive violations. The court is satisfied that Hopkins's sanction was within the range permitted by the BOP's regulations. See 28 C.F.R. § 541.13(a)(3) & Table 3.

9

B. <u>Hopkins's Loss of Privileges Does Not Implicate a Liberty Interest</u>.

Hopkins's second ground for relief is based on the contention that the DHO sanctioned him with a loss of privileges that was extremely disproportionate to the sanctions imposed on other inmates. As Hopkins acknowledges, sanctions that change an inmate's conditions of confinement do not implicate due process concerns. <u>Madison</u>, 104 F.3d at 768; see <u>Malchi v. Thaler</u>, 211 F.3d 953, 958 (5th Cir. 2000) (loss of commissary privileges does not implicate due process concerns); <u>Berry v. Brady</u>, 192 F.3d 504, 508 (5th Cir. 1999) (no constitutional right to visitation privileges).

C. <u>The DHO Did Not Act in Retaliation</u>.

Hopkins alleges that, after he filed an administrative appeal, the DHO's actions were "precipitated by retaliatory animus." Applicant's Reply at 11. Claims of retaliation in disciplinary actions are to be carefully scrutinized and approached with skepticism. <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995). The inmate must allege "the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." <u>Id.</u>

A review of the record does not suggest retaliation.[4]

---

[4] While the DHO's affidavit literally reads "I did retaliate against Hopkins," the context of the sentence within the rest of the paragraph clearly indicates that the DHO meant to deny retaliation. Resp't App. at 35.

10

Hopkins alleges that the DHO would not have found a Code 305 violation but for Hopkins's filing an administrative appeal. The record reflects that the DHO found a Code 305 violation because her regional director told her that she could not find a Code 113 violation and the evidence originally found to support the Code 113 violation was sufficient to find a Code 305 violation. Viewing the record as a whole, the court concludes that the DHO's finding that Hopkins violated a Code 305 violation was not spurred by retaliatory animus, but rather was a proper finding based on the evidence presented at Hopkins's hearing.

Further, Hopkins contends that retaliation is illustrated by the DHO's refusal to return the case to the UDC after her regional director told her that Hopkins could not be found to have violated Code 113, and the allegedly excessive nature of his loss of privileges. These allegations do not implicate a violation of a specific constitutional right for the reasons discussed in Sections IV.B and IV.A.3.

D.  The Investigator's Actions Did Not Deprive Hopkins of Due Process.

Finally, Hopkins argues that the investigator "intentionally manipulat[ed] the seriousness of the alleged charge" in order to assure that Hopkins would be placed in an SHU pending a hearing. Application at 10. The Due Process Clause "does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). While nothing in the record suggests foul play on

11

the part of the investigator, such ill motive would not give rise to the habeas relief Hopkins seeks because administrative segregation does not give rise to a claim under the Constitution. See Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995); see also Dixon v. Hastings, 202 Fed. App'x 750 (5th Cir. 2006).

V.

ORDER

For the reasons discussed above,

The court ORDERS that Hopkins's application be, and is hereby, denied.

SIGNED February 19, 2009.

JOHN McBRYDE
United States District Judge